UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NORTH CAROLINA
CHARLOTTE DIVISION
DOCKET NO. 3:20-cv-00629-FDW-DCK

| | |
|---|---|
| NIVILLA ROCKEE CAMPBELL, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| vs. ) | |
| ) | ORDER |
| CITY OF SHELBY, NC, JULIE ) | |
| MCMURRAY, RICK HOWELL, and ) | |
| SCOTT HUFFSTETLER, ) | |
| ) | |
| Defendants. ) | |

THIS MATTER is before the Court on Defendants' Motion for Summary Judgment, (Doc. No. 22), wherein Defendants move this Court, pursuant to Rule 56 of the Federal Rules of Civil Procedure, to grant summary judgment in favor of Defendants as to all of Plaintiff's claims. In accordance with the principles set forth in Roseboro v. Garrison, the Court advised Plaintiff, who is proceeding pro se, of the burden she carries in responding to Defendants' motions. (Doc. No. 35). The Motion has been fully briefed and is ripe for review. For the reasons set forth below, Defendants' Motion for Summary Judgment is GRANTED.

**I.     BACKGROUND**

*Pro se* plaintiff Nivilla Campbell ("Plaintiff") was formerly employed by the City of Shelby Natural Gas Department ("Defendant") until her resignation on August 2, 2019. (Doc. No. 5, p. 2). On March 11, 2019, Plaintiff reported an incident to her supervisor, Julie McMurry, claiming Plaintiff was in the breakroom with coworkers discussing an upcoming basketball tournament. (Doc. No. 22-3, p. 1). According to Plaintiff, another employee, Scott Huffstetler,

1

then joined the conversation and asked if they were discussing the "colored tournament." Id. In response, Plaintiff told Mr. Huffstetler that she preferred to be called "black." Id. at 1–2. According to Plaintiff, Mr. Huffstetler responded, "I could have called you what they called you back in the day when they picked cotton. I could have called you another name." Id. at 2. Plaintiff reported these statements to Ms. McMurry, who apologized for Mr. Huffstetler's behavior and stated she would immediately investigate the complaint. Id. Ms. McMurry collected written statements from all three employees present in the breakroom. Id. The statements were then submitted to the Director of Human Resources, Deborah Jolly, for review. Id.

After discussion, Ms. McMurry and Ms. Jolly agreed Mr. Huffstetler had violated policy and disciplinary action was implemented. (Doc. No. 22-4, p. 1). On April 26, 2019, Plaintiff inquired about the incident and, according to Ms. Jolly's affidavit, Ms. Jolly assured Plaintiff that Ms. McMurry had "completed a timely and thorough investigation so that appropriate action could be taken and that the Personnel Policy was followed." Id. at 1–2. Ms. Jolly reminded Plaintiff of Defendant's grievance policy if she was unhappy with the outcome; however, Plaintiff never filed a grievance. Id. at 2. Plaintiff contends that as part of her employment, Defendant denied her the opportunity to attend conferences and training. (Doc. No. 30, p. 7–8). Plaintiff resigned her employment with Defendant on August 2, 2019.

On April 22, 2019, and while she was still employed with Defendant, Plaintiff filed a Charge of Discrimination ("Charge") with the Equal Employment Opportunity Commission ("EEOC") alleging she was discriminated against based on race. (Doc. No. 1-1, p. 4). On August 13, 2020, Plaintiff was issued a Dismissal and Notice of Rights letter. Id. at 1. Consequently, Plaintiff filed this action alleging race discrimination and retaliation. (Doc. No. 1).

2

## II. STANDARD OF REVIEW

Summary judgment shall be granted "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A factual dispute is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). A fact is material only if it might affect the outcome of the suit under governing law. Id.

The movant has the "initial responsibility of informing the district court of the basis for its motion, and identifying those portions of 'the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any,' which it believes demonstrate the absence of a genuine issue of material fact." Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986) (internal citations omitted).

Once this initial burden is met, the burden shifts to the nonmoving party. Id. at 322. The nonmoving party "must set forth specific facts showing that there is a genuine issue for trial." Id. at 322 n.3. The nonmoving party may not rely upon mere allegations or denials of allegations in his pleadings to defeat a motion for summary judgment. Id. The nonmoving party must present sufficient evidence from which "a reasonable jury could return a verdict for the nonmoving party." Anderson, 477 U.S. at 248; accord Sylvia Dev. Corp. v. Calvert Cnty., Md., 48 F.3d 810, 818 (4th Cir. 1995).

When ruling on a summary judgment motion, a court must view the evidence and any inferences from the evidence in the light most favorable to the nonmoving party. Anderson, 477 U.S. at 255. "The mere existence of a scintilla of evidence in support of the plaintiff's position [is] insufficient; there must be evidence on which the [fact finder] could reasonably find for the

3

Case 3:20-cv-00629-FDW-DCK   Document 45   Filed 03/04/22   Page 3 of 11

plaintiff." Id. at 252. "'Where the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no genuine issue for trial.'" Ricci v. DeStefano, 557 U.S. 557, 586 (2009) (quoting Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986)).

### III. ANALYSIS

Plaintiff filed suit against her former employer, as well as several coworkers, alleging race discrimination in violation of Title VII. All Defendants have moved for summary judgment asserting they are entitled to judgment as a matter of law. The Court considers each Defendant's arguments in turn.

#### A. Individual Defendants

Rick Howell, Julie McMurry, and Scott Huffstetler (collectively, "Individual Defendants") move for summary judgment and argue that Title VII precludes Plaintiff's claims against them. In relevant part, Title VII provides that "[i]t shall be an unlawful employment practice for an employer . . . to discriminate against any individual with respect to his . . . terms, conditions, or privileges of employment, because of such individual's . . . [race.]" Lissau v. S. Food Serv., Inc., 159 F.3d 177, 180 (4th Cir. 1998) (quoting 42 U.S.C. § 2000e-2(a)). Moreover, the Fourth Circuit has held "that supervisors are not liable in their individual capacities for Title VII violations." Id.

Here, Defendant was Plaintiff's sole employer; the Individual Defendants were merely coworkers and are not liable under Title VII. Plaintiff presents neither argument nor evidence to support her claims against the Individual Defendants. Further, Plaintiff failed to refute evidence supporting the contention that the Individual Defendants should be dismissed. Where a plaintiff fails to dispute a defendant's assertions, the Court may consider these facts undisputed. Fed. R.

4

Case 3:20-cv-00629-FDW-DCK   Document 45   Filed 03/04/22   Page 4 of 11

Civ. P. 56(e)(2); see also Tyce v. AT&T Corp., No. 321CV00040FDWDSC, 2021 WL 5022377, at *3 (W.D.N.C. Oct. 28, 2021). Therefore, summary judgment for the Individual Defendants is appropriate.

### B. City of Shelby

As part of the instant motion, the City of Shelby moves to dismiss for Plaintiff's failure to properly serve. Federal Rule of Civil Procedure 12(h)(1) states, "[a] defense of . . . insufficiency of process, or insufficiency of service of process is waived . . . if it is neither made by motion under this rule nor included in a responsive pleading." Hoyle v. United Auto Workers Local Union 5285, 444 F. Supp. 2d 467, 473 (W.D.N.C. 2006). Although Defendant did not argue the issue of ineffective service of process until its Motion for Summary Judgment, the defense was preserved in its Answer. (Doc. No. 8, p. 1); See id.. Rule 4 of the Federal Rules of Civil Procedure requires, "a federal plaintiff [to] serve process on a local government by delivering a copy of the summons and complaint to its chief executive officer, or by serving the local government in compliance with the law of the state where the federal court is located." Cherry v. Spence, 249 F.R.D. 226, 229 (E.D.N.C. 2008) (quoting Fed. R. Civ. P. 4(j)(2)). Under North Carolina law, service upon a city is effectuated:

> by personally delivering a copy of the summons and of the complaint to its mayor, city manager or clerk; by mailing a copy of the summons and of the complaint, registered or certified mail, return receipt requested, addressed to its mayor, city manager or clerk; or by depositing with a designated delivery service authorized pursuant to 26 U.S.C. § 7502(f)(2) a copy of the summons and complaint, addressed to the mayor, city manager, or clerk, delivering to the addressee, and obtaining a delivery receipt.

N.C. R. Civ. P. 4(j)(5).

Here, the record reflects obvious defects in Plaintiff's attempt to serve the City of Shelby; however, it also indicates Defendant received actual notice of Plaintiff's claims against it. The Fourth Circuit has explained that where service of process has given the defendant actual notice of the litigation, "the rules, in general are entitled to a liberal construction. When there is actual notice, every technical violation of the rule or failure of strict compliance may not invalidate the service of process." Armco, Inc. v. Penrod-Stauffer Bldg. Sys., Inc., 733 F.2d 1087, 1089 (4th Cir. 1984); see also Karlsson v. Rabinowitz, 318 F.2d 666, 668 (4th Cir. 2011) ("The provisions of [Rule 4] should be liberally construed to effectuate service and uphold the jurisdiction of the court, thus insuring the opportunity for a trial on the merits."). For these reasons, the Court presumes without deciding that service is appropriate here.

Turning to the merits of this case, the City of Shelby moves for summary judgment on Plaintiff's claims. Under Title VII, it is unlawful for an employer "to discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex, or national origin." 42 U.S.C. § 2000e-2. Prior to filing suit under Title VII, a plaintiff "is required to file a charge of discrimination with the EEOC." Jones v. Calvert Grp., Ltd., 551 F.3d 297, 300 (4th Cir. 2009); see 42 U.S.C. § 2000e-5(f)(1). Since the charge's contents determine the scope of a plaintiff's right to file suit under Title VII, "[o]nly those discrimination claims stated in the initial charge, those reasonably related to the original complaint, and those developed by reasonable investigation of the original complaint may be maintained in a subsequent Title VII lawsuit." Jones, 551 F.3d at 300 (quoting Evans v. Techs. Applications & Serv. Co., 80 F.3d 954, 963 (4th Cir. 1996)). "The EEOC charge defines the scope of the plaintiff's right to institute a civil suit." Bryant v. Bell Atl. Md., Inc., 288 F.3d 124, 132 (4th

6

Cir. 2002). This is because "the goals of providing notice and an opportunity for an agency response would be undermined . . . if a plaintiff could raise claims in litigation that did not appear in his EEOC charge." Sydnor v. Fairfax Cty., Va., 681 F.3d 591, 593 (4th Cir. 2012). "[C]laims raised . . . [that] exceed the scope of the EEOC charge and any charges that would naturally have arisen from an investigation thereof . . . are procedurally barred." Dennis v. County of Fairfax, 55 F. 3d 151, 156 (4th Cir. 1995). "Instead, so long as 'a plaintiff's claims in her judicial complaint are reasonably related to her EEOC charge and can be expected to follow from a reasonable administrative investigation,' she 'may advance such claims in her subsequent civil suit.'" Sydnor, 681 F.3d at 594 (quoting Smith v. First Union Nat'l Bank, 202 F.3d 234, 247 (4th Cir. 2000)).

Here, the City argues Plaintiff's Amended Complaint seeks to expand the scope of EEOC Charge, and as a result, those new allegations are not appropriately before the Court. (Doc. No. 22-1, pp. 7–8). As a preliminary matter, in her EEOC Charge, Plaintiff alleges discrimination based on race and specifically details the March 11, 2019, incident. (Doc. No. 1-1, pp. 4–5). However, Plaintiff's Amended Complaint attempts to include instances outside the time frame identified in her EEOC charge that she now contends support her Title VII claims. For example, she alleges on or around October 20, 2017, a fellow employee pulled her hair and used it as a cleaning tool, and, on an unspecified occasion, she was called a "bitch" by Caucasian male employee. (Doc. No. 5, p. 3). Plaintiff has neither alleged nor forecast evidence that this conduct involved the same actors as the March 2019 incident reported to the EEOC. The record therefore supports a determination that Plaintiff has not exhausted her administrative remedies regarding the additional conduct for which she now seeks to complain. Nevertheless, the Court again presumes

7

without deciding that the newly-raised instances of discrimination are reasonably related to her EEOC charge.

In order to demonstrate a Title VII claim for employment discrimination based on race and/or a hostile work environment, Plaintiff must show: (1) unwelcome conduct; (2) that was based on her race; (3) that was sufficiently severe or pervasive to alter her conditions of employment and to create an abusive work environment; and (4) that was imputable to the employer. Mosby-Grant v. City of Hagerstown, 630 F.3d 326, 334 (4th Cir. 2010) (citing Conner v. Schrader-Bridgeport Int'l, Inc., 227 F.3d 179, 192 (4th Cir. 2000)); Finley v. SageNet LLC, No. 309CV123FDW, 2009 WL 1850958, at *4 (W.D.N.C. June 29, 2009). Based on the record before the Court, Plaintiff has not presented any evidence for a reasonable jury to conclude that she was exposed to a hostile work environment because of her race.

Even assuming Plaintiff can establish elements one, two, and four, Plaintiff has failed to forecast any evidence to show the third element of a Title VII discrimination claim. Specifically, Plaintiff lacks any evidence to support that Mr. Huffstetler's conduct was sufficiently severe or pervasive enough to alter her conditions of employment and to create an abusive work environment. In order to effectively demonstrate the offensive conduct was necessarily severe or pervasive, the Court considers "frequency of the discriminatory conduct; its severity; whether it is physically threatening or humiliating, or a mere offensive utterance; and whether it unreasonably interferes with an employee's work performance." Id. (quoting Faragher v. City of Boca Raton, 524 U.S. 775, 787–88 (1998)). Although inappropriate and unwelcomed, Mr. Huffstetler's comments are merely representative of a single incident and not demonstrative of a racially abusive work environment. No evidence exists in the record tending to show that Mr. Huffstetler made any

8

additional racially insensitive remarks.  Furthermore, Plaintiff's employment conditions remained the same as she continued her duties with Defendant until her resignation.

Plaintiff contends the Mr. Huffstetler's comment, along with two other comments by Plaintiff's coworkers—one of which occurred nearly two years prior to the incident with Mr. Huffstetler—collectively demonstrate discrimination.  Notably, other than her own assertions, Other than her own allegations, Plaintiff lacks any evidentiary support for the two remarks made by different coworkers.  And, none of these alleged remarks, considered alone or collectively, are sufficient to raise a genuine issue of material fact as to Plaintiff's ability to establish a discrimination claim.  Plaintiff has presented neither argument nor evidence that these remarks were made by decision makers, rise to the level of a hostile work environment, or interfered with her work performance.  In sum, the record before the Court does not support conduct that was sufficiently severe or pervasive to alter Plaintiff's employment conditions and to create an abusive work environment.

The City also moves for summary judgment on Plaintiff's retaliation claim.  Title VII makes it unlawful for an employer to retaliate against an employee when the employee engages in reasonable conduct opposing conduct made unlawful by Title VII. 42 U.S.C. § 2000e-3. To establish a prima facie claim of retaliation, "a plaintiff must prove '(1) that she engaged in a protected activity,' as well as '(2) that her employer took an adverse employment action against her,' and '(3) that there was a causal link between the two events.'" Boyer-Liberto v. Fontainebleau Corp., 786 F.3d 264, 281 (4th Cir. 2015) (citing EEOC v. Navy Fed. Credit Union, 424 F.3d 397, 405–06 (4th Cir. 2005)). Based on the record before the Court, Plaintiff has not presented any evidence for a reasonable jury to conclude that Defendant unlawfully retaliated against her.

9

Plaintiff failed to include her retaliation claim in her EEOC Charge. This, alone, is fatal to her claim at this juncture. See Jones, 551 F.3d at 300; Bryant v. Bell Atlantic Maryland, Inc., 288 F.3d 124, 132–33 (4th Cir. 2022). However, in her Amended Complaint, Plaintiff alleges Defendant retaliated against her by denying her requests to attend out of state training and conferences. (Doc. No. 5, p. 4). Other than this conclusory allegation, Plaintiff does not specifically state which activities she is alleging should be considered protected conduct, and she does not identify the activities for which Defendant allegedly retaliated against her.

Plaintiff also contends she suffered an adverse employment action when Defendant allegedly told her to "let it go." (Doc. No. 30, p. 4). The Fourth Circuit has defined an adverse action as "one that 'constitutes a significant change in employment status, such as hiring, firing, failing to promote, reassignment with significantly different responsibilities, or a decision causing a significant change in benefits.'" Hoyle v. Freightliner, LLC, 650 F.3d 321, 337 (4th Cir. 2011) (quoting Ellerth, 524 U.S. at 761). Thus, in the event Plaintiff had forecast any evidence to support her allegations that Defendant precluded her from participating in training activities, such conduct does not rise to the level of adverse actions recognized by this Court.

Even if Plaintiff could establish the adverse action, a causal link between the two is still missing. Defendant contends there is no causal link between Plaintiff's claim and the alleged denial of training opportunities, and Plaintiff does not provide any evidence supporting such a causal link. Without evidence supporting a causal link between the protected conduct and an adverse action, her claim fails.

Finally, Plaintiff refers to "constructive discharge" twice in her response to Defendant's Motion for Summary Judgment. (Doc. No. 30, pp. 5, 8). To establish constructive discharge,

10

Plaintiff "must at the outset show that [her] employer deliberately made [her] working conditions intolerable in an effort to induce [her] to quit." Webster v. Town of Warsaw, 66 F. Supp. 3d 706, 710 (E.D.N.C. 2014) (quoting Heiko v. Colombo Savings Bank, F.S.B., 434 F.3d 249, 262 (4th Cir. 2006)). However, liberally construing the record before the Court, Plaintiff presents neither argument nor evidence for a reasonable jury to conclude she was constructively discharged.

Therefore, even if Plaintiff's retaliation claim had been included in her EEOC Charge, it would fail because a genuine issue of material fact has not been established.

## IV. CONCLUSION

IT IS THEREFORE ORDERED that Defendants' Motion for Summary Judgment (Doc. No. 22) is GRANTED. All other pending motions are DENIED AS MOOT. The Clerk of Court is respectfully directed to terminate all deadlines, including trial, and CLOSE THE CASE.

IT IS SO ORDERED.

Signed: March 4, 2022

Frank D. Whitney
United States District Judge